GRAVES ET AL., COMMISSIONERS CONSTITUTING THE STATE TAX COMMISSION OF NEW YORK, *v.* NEW YORK EX REL. O'KEEFE.

No. 478. Argued March 6, 1939.—Decided March 27, 1939.

*Mr. Henry Epstein,* Solicitor General of New York, with whom *Messrs. John J. Bennett, Jr.,* Attorney General, *Joseph M. Mesnig,* and *Austin J. Tobin* were on the brief, for petitioners.

Mr. Daniel McNamara, Jr. for respondent.

470

*Solicitor General Jackson,* with whom *Assistant Attorney General Morris,* and *Messrs. Sewall Key* and *Warner W. Gardner* were on the brief, for the United States, as *amicus curiae,* by leave of Court.

474

By leave of Court, *Messrs. Roy McKittrick,* Attorney General of Missouri, and *Edward H. Miller,* Assistant Attorney General, filed a brief on behalf of that State, as *amicus curiae,* in support of petitioners.

Mr. Justice Stone delivered the opinion of the Court.

We are asked to decide whether the imposition by the State of New York of an income tax on the salary of an employee of the Home Owners' Loan Corporation places an unconstitutional burden upon the federal government.

Respondent, a resident of New York, was employed during 1934 as an examining attorney for the Home Owners' Loan Corporation at an annual salary of $2,400. In his income tax return for that year he included his salary as subject to the New York state income tax imposed by Art. 16 of the Tax Law of New York (Consol. Laws, c. 60). Subdivision 2f of § 359, since repealed, exempted from the tax "Salaries, wages and other compensation received from the United States of officials or employees thereof, including persons in the military or naval forces of the United States. . . ." Petitioners,

New York State Tax Commissioners, rejected respondent's claim for a refund of the tax based on the ground that his salary was constitutionally exempt from state taxation because the Home Owners' Loan Corporation is an instrumentality of the United States Government and that he, during the taxable year, was an employee of the federal government engaged in the performance of a governmental function.

On review by certiorari the Board's action was set aside by the Appellate Division of the Supreme Court of New York, 253 App. Div. 91; 1 N. Y. S. 2d 195, whose order was affirmed by the Court of Appeals. 278 N. Y. 691; 16 N. E. 2d 404. Both courts held respondent's salary was free from tax on the authority of *New York ex rel. Rogers* v. *Graves*, 299 U. S. 401, which sustained the claim that New York could not constitutionally tax the salary of an employee of the Panama Rail Road Company, a wholly-owned corporate instrumentality of the United States. We granted certiorari, 305 U. S. 592, the constitutional question presented by the record being of public importance.

The Home Owners' Loan Corporation was created pursuant to § 4 (a) of the Home Owners' Loan Act of 1933, 48 Stat. 128, 12 U. S. C. § 1461 *et seq.*, which was enacted to provide emergency relief to home owners, particularly to assist them with respect to home mortgage indebtedness. The corporation, which is authorized to lend money to home owners on mortgages and to refinance home mortgage loans within the purview of the Act, is declared by § 4 (a) to be an instrumentality of the United States. Its shares of stock are wholly government-owned. § 4 (b). Its funds are deposited in the Treasury of the United States, and the compensation of its employees is paid by drafts upon the Treasury.

For the purposes of this case we may assume that the creation of the Home Owners' Loan Corporation was a constitutional exercise of the powers of the federal government. Cf. *Kay* v. *United States,* 303 U. S. 1. As that government derives its authority wholly from powers delegated to it by the Constitution, its every action within its constitutional power is governmental action, and since Congress is made the sole judge of what powers within the constitutional grant are to be exercised, all activities of government constitutionally authorized by Congress must stand on a parity with respect to their constitutional immunity from taxation. *McCulloch* v. *Maryland,* 4 Wheat. 316, 432; *Van Brocklin* v. *Tennessee,* 117 U. S. 151, 158–159; *South Carolina* v. *United States,* 199 U. S. 437, 451–452; *Helvering* v. *Gerhardt,* 304 U. S. 405, 412–415. And when the national government lawfully acts through a corporation which it owns and controls, those activities are governmental functions entitled to whatever tax immunity attaches to those functions when carried on by the government itself through its departments. See *McCulloch* v. *Maryland, supra,* 421–422; *Smith* v. *Kansas City Title Co.,* 255 U. S. 180, 208; *Federal Land Bank* v. *Crosland,* 261 U. S. 374; *New York ex rel. Rogers* v. *Graves, supra.*

The single question with which we are now concerned is whether the tax laid by the state upon the salary of respondent, employed by a corporate instrumentality of the federal government, imposes an unconstitutional burden upon that government. The theory of the tax immunity of either government, state or national, and its instrumentalities, from taxation by the other, has been rested upon an implied limitation on the taxing power of each, such as to forestall undue interference, through the exercise of that power, with the govern-

mental activities of the other. That the two types of immunity may not, in all respects, stand on a parity has been recognized from the beginning, *McCulloch* v. *Maryland, supra,* 435–436, and possible differences in application, deriving from differences in the source, nature and extent of the immunity of the governments and their agencies, were pointed out and discussed by this Court in detail during the last term. *Helvering* v. *Gerhardt, supra,* 412–413, 416.

So far as now relevant, those differences have been thought to be traceable to the fact that the federal government is one of delegated powers in the exercise of which Congress is supreme; so that every agency which Congress can constitutionally create is a governmental agency. And since the power to create the agency includes the implied power to do whatever is needful or appropriate, if not expressly prohibited, to protect the agency, there has been attributed to Congress some scope, the limits of which it is not now necessary to define, for granting or withholding immunity of federal agencies from state taxation. See *Van Allen* v. *The Assessors,* 3 Wall. 573, 583, 585; *Bank* v. *Supervisors,* 7 Wall. 26, 30, 31; *Thomson* v. *Pacific Railroad,* 9 Wall. 579, 588, 590; *People* v. *Weaver,* 100 U. S. 539, 543; *Mercantile Bank* v. *New York,* 121 U. S. 138, 154; *Owensboro National Bank* v. *Owensboro,* 173 U. S. 664, 668; *Shaw* v. *Gibson-Zahniser Oil Corp.,* 276 U. S. 575, 581; *Oklahoma* v. *Barnsdall Refineries, Inc.,* 296 U. S. 521, 525–526; *Baltimore National Bank* v. *State Tax Comm'n,* 297 U. S. 209, 211–212; *British-American Oil Co.* v. *Board,* 299 U. S. 159; *James* v. *Dravo Contracting Co.,* 302 U. S. 134, 161; *Helvering* v. *Gerhardt, supra,* 411, 412, 417; cf. *United States* v. *Bekins,* 304 U. S. 27, 52. Whether its power to grant tax exemptions as an incident to the exercise of powers specifically granted by the Constitution can ever, in any circumstances, extend beyond the con-

stitutional immunity of federal agencies which courts have implied, is a question which need not now be determined.

Congress has declared in § 4 of the Act that the Home Owners' Loan Corporation is an instrumentality of the United States and that its bonds are exempt, as to principal and interest, from federal and state taxation, except surtaxes, estate, inheritance and gift taxes. The corporation itself, "including its franchise, its capital, reserves and surplus, and its loans and income," is likewise exempted from taxation; its real property is subject to tax to the same extent as other real property. But Congress has given no intimation of any purpose either to grant or withhold immunity from state taxation of the salary of the corporation's employees, and the Congressional intention is not to be gathered from the statute by implication. Cf. *Baltimore National Bank* v. *State Tax Comm'n, supra.*

It is true that the silence of Congress, when it has authority to speak, may sometimes give rise to an implication as to the Congressional purpose. The nature and extent of that implication depend upon the nature of the Congressional power and the effect of its exercise.[1] But

---

[1] The failure of Congress to regulate interstate commerce has generally been taken to signify a Congressional purpose to leave undisturbed the authority of the states to make regulations affecting the commerce in matters of peculiarly local concern, but to withhold from them authority to make regulations affecting those phases of it which, because of the need of a national uniformity, demand that their regulation, if any, be prescribed by a single authority. *Cooley* v. *Board of Wardens,* 12 How. 299, 319; *Minnesota Rate Cases,* 230 U. S. 352, 399–400; *Kelly* v. *Washington,* 302 U. S. 1, 14; *South Carolina Highway Dept.* v. *Barnwell Brothers,* 303 U. S. 177, 184–185; *Milk Control Board* v. *Eisenberg Farm Products, ante,* p. 346. As to the implications from Congressional silence in the field of state taxation of interstate commerce and its instrumentalities, see *Western Live Stock* v. *Bureau of Revenue,* 303 U. S. 250; *Gwin, White & Prince* v. *Henneford,* 305 U. S. 434.

there is little scope for the application of that doctrine to the tax immunity of governmental instrumentalities. The constitutional immunity of either government from taxation by the other, where Congress is silent, has its source in an implied restriction upon the powers of the taxing government. So far as the implication rests upon the purpose to avoid interference with the functions of the taxed government or the imposition upon it of the economic burden of the tax, it is plain that there is no basis for implying a purpose of Congress to exempt the federal government or its agencies from tax burdens which are unsubstantial or which courts are unable to discern. Silence of Congress implies immunity no more than does the silence of the Constitution. It follows that when exemption from state taxation is claimed on the ground that the federal government is burdened by the tax, and Congress has disclosed no intention with respect to the claimed immunity, it is in order to consider the nature and effect of the alleged burden, and if it appears that there is no ground for implying a constitutional immunity, there is equally a want of any ground for assuming any purpose on the part of Congress to create an immunity.

The present tax is a non-discriminatory tax on income applied to salaries at a specified rate. It is not in form or substance a tax upon the Home Owners' Loan Corporation or its property or income, nor is it paid by the corporation or the government from their funds. It is measured by income which becomes the property of the taxpayer when received as compensation for his services; and the tax laid upon the privilege of receiving it is paid from his private funds and not from the funds of the government, either directly or indirectly. The theory, which once won a qualified approval, that a tax on income is legally or economically a tax on its source, is no longer tenable, *New York ex rel. Cohn* v. *Graves,* 300 U. S. 308, 313, 314; *Hale* v. *State Board,* 302 U. S. 95, 108; *Helver-*

*ing* v. *Gerhardt, supra;* cf. *Metcalf & Eddy* v. *Mitchell,* 269 U. S. 514; *Fox Film Corp.* v. *Doyal,* 286 U. S. 123; *James* v. *Dravo Contracting Co., supra,* 149; *Helvering* v. *Mountain Producers Corp.,* 303 U. S. 376, and the only possible basis for implying a constitutional immunity from state income tax of the salary of an employee of the national government or of a governmental agency is that the economic burden of the tax is in some way passed on so as to impose a burden on the national government tantamount to an interference by one government with the other in the performance of its functions.

In the four cases in which this Court has held that the salary of an officer or employee of one government or its instrumentality was immune from taxation by the other, it was assumed, without discussion, that the immunity of a government or its instrumentality extends to the salaries of its officers and employees.[2] This assumption made with respect to the salary of a governmental officer

---

[2] In *Dobbins* v. *Commissioners of Erie County,* 16 Pet. 435, a Pennsylvania tax, nominally laid upon the office of the captain of a federal revenue cutter, but roughly measured by the salary paid to the officer, was held invalid. The Court seems to have rested its decision in part on the ground that a tax on the emoluments of his office was the equivalent of a tax upon an activity of the national government, and in part on the ground that it was an infringement of the implied superior power of Congress to fix the compensation of government employees without diminution by state taxation.

In *Collector* v. *Day,* 11 Wall. 113, this Court held that the salary of a state probate judge was constitutionally immune from federal income tax on the grounds that the salary of an officer of a state is exempt from federal taxation if the function he performs as an officer is exempt, citing *Dobbins* v. *Commissioners, supra,* and that there was an implied constitutional restriction upon the power of the national government to tax a state in the exercise of those functions which were essential to the maintenance of state governments as they were organized at the time when the Constitution was adopted. The possibility that a non-discriminatory tax upon the income of a state officer did not involve any substantial interference

in *Dobbins* v. *Commissioners of Erie County,* 16 Pet. 435, and in *Collector* v. *Day,* 11 Wall. 113, was later extended to confer immunity on income derived by a lessee from lands leased to him by a government in the performance of a governmental function, *Gillespie* v. *Oklahoma,* 257 U. S. 501; *Burnet* v. *Coronado Oil & Gas Co.,* 285 U. S. 393, and cases cited, although the claim of a like exemption from tax on the income of a contractor engaged in carrying out a governmental project was rejected both in the case of a contractor with a state, *Metcalf & Eddy* v.

---

with the functioning of the state government was not discussed either in this or the *Dobbins* case.

In *New York ex rel. Rogers* v. *Graves,* 299 U. S. 401, the question was whether the salary of the general counsel of the Panama Rail Road Company was exempt from state income tax because the railroad company was an instrumentality of the federal government. The sole question raised by the taxing state was whether the railroad company was a government instrumentality. The Court, having found that the railroad company was such an instrumentality, disposed of the matter of tax exemption of the salary of its employees by declaring: "The railroad company being immune from state taxation, it necessarily results that fixed salaries and compensation paid to its officers and employees in their capacity as such are likewise immune." *New York ex rel. Rogers* v. *Graves, supra,* 408.

In *Brush* v. *Commissioner,* 300 U. S. 352, the applicable treasury regulation upon which the government relied exempted from federal income tax the compensation of "state officers and employees" for "services rendered in connection with the exercise of an essential governmental function of the State." The Court held that the maintenance of the public water system of New York City was an essential governmental function, and in determining whether the salary of the engineer in charge of that project was subject to federal income tax the Court declared, citing *New York ex rel. Rogers* v. *Graves, supra,* 408; "The answer depends upon whether the water system of the city was created and is conducted in the exercise of the city's governmental functions. If so, its operations are immune from federal taxation and, as a necessary corollary, 'fixed salaries and compensation paid to its officers and employees in their capacity as such are likewise immune." *Brush* v. *Commissioner, supra,* 360.

*Mitchell, supra,* and of a contractor with the national government, *James* v. *Dravo Contracting Co., supra.*

The ultimate repudiation in *Helvering* v. *Mountain Producers Corp., supra,* of the doctrine that a tax on the income of a lessee derived from a lease of government owned or controlled lands is a forbidden interference with the activities of the government concerned led to the re-examination by this Court, in the *Gerhardt* case, of the theory underlying the asserted immunity from taxation by one government of salaries of employees of the other. It was there pointed out that the implied immunity of one government and its agencies from taxation by the other should, as a principle of constitutional construction, be narrowly restricted. For the expansion of the immunity of the one government correspondingly curtails the sovereign power of the other to tax, and where that immunity is invoked by the private citizen it tends to operate for his benefit at the expense of the taxing government and without corresponding benefit to the government in whose name the immunity is claimed. See *Metcalf & Eddy* v. *Mitchell, supra,* 523–524; *James* v. *Dravo Contracting Co., supra,* 156–158. It was further pointed out that, as applied to the taxation of salaries of the employees of one government, the purpose of the immunity was not to confer benefits on the employees by relieving them from contributing their share of the financial support of the other government, whose benefits they enjoy, or to give an advantage to a government by enabling it to engage employees at salaries lower than those paid for like services by other employers, public or private,[3] but to

___

[3] The fact that the expenses of the one government might be lessened if all those who deal with it were exempt from taxation by the other was thought not to be an adequate basis for tax immunity in *Metcalf & Eddy* v. *Mitchell,* 269 U. S. 514; *Group No. 1 Oil Corp.* v. *Bass,* 283 U. S. 279; *Burnet* v. *Jergins Trust,* 288 U. S. 508; *James* v. *Dravo Contracting Co.,* 302 U. S. 134; *Helvering* v. *Mountain Producers Corp.,* 303 U. S. 376.

prevent undue interference with the one government by imposing on it the tax burdens of the other.

In applying these controlling principles in the *Gerhardt* case the Court held that the salaries of employees of the New York Port Authority, a state instrumentality created by New York and New Jersey, were not immune from federal income tax, even though the Authority be regarded as not subject to federal taxation. It was said that the taxpayers enjoyed the benefit and protection of the laws of the United States and were under a duty, common to all citizens, to contribute financial support to the government; that the tax laid on their salaries and paid by them could be said to affect or burden their employer, the Port Authority, or the states creating it, only so far as the burden of the tax was economically passed on to the employer; that a non-discriminatory tax laid on the income of all members of the community could not be assumed to obstruct the function which New York and New Jersey had undertaken to perform, or to cast an economic burden upon them, more than does the general taxation of property and income which, to some extent, incapable of measurement by economists, may tend to raise the price level of labor and materials.[4] The Court concluded

---

[4] That the economic burden of a tax on salaries is passed on to the employer or that employees will accept a lower government salary because of its tax immunity, are formulas which have not won acceptance by economists and cannot be judicially assumed. As to the "passing on" of the economic burden of the tax, see Seligman, Income Tax, VII Encyclopedia of Social Sciences, 626–638; Plehn, Public Finance (5th ed.), p. 320; Buehler, Public Finance, p. 240; Lutz, Public Finance (2d ed.), p. 336, and see *Indian Motocycle Co.* v. *United States,* 283 U. S. 570, 581, footnote 1. As to preference for government employment because the salary is tax exempt, see Dickinson, Compensating Industrial Effort (1937), pp. 7–8; Douglas, The Reality of Non-Commercial Incentives in Industrial Life, c. V of The Trend of Economics (1924); Vol. I, Fetter, Economic Principles (1915), p. 203.

that the claimed immunity would do no more than relieve the taxpayers from the duty of financial support to the national government in order to secure to the state a theoretical advantage, speculative in character and measurement and too unsubstantial to form the basis of an implied constitutional immunity from taxation.

The conclusion reached in the *Gerhardt* case that in terms of constitutional tax immunity a federal income tax on the salary of an employee is not a prohibited burden on the employer makes it imperative that we should consider anew the immunity here claimed for the salary of an employee of a federal instrumentality. As already indicated, such differences as there may be between the implied tax immunity of a state and the corresponding immunity of the national government and its instrumentalities may be traced to the fact that the national government is one of delegated powers, in the exercise of which it is supreme. Whatever scope this may give to the national government to claim immunity from state taxation of all instrumentalities which it may constitutionally create, and whatever authority Congress may possess as incidental to the exercise of its delegated powers to grant or withhold immunity from state taxation, Congress has not sought in this case to exercise such power. Hence these distinctions between the two types of immunity cannot affect the question with which we are now concerned. The burden on government of a non-discriminatory income tax applied to the salary of the employee of a government or its instrumentality is the same, whether a state or national government is concerned. The determination in the *Gerhardt* case that the federal income tax imposed on the employees of the Port Authority was not a burden on the Port Authority made it unnecessary to consider whether the Authority itself was immune from federal taxation; the claimed immunity failed because even if the Port Authority were

itself immune from federal income tax, the tax upon the income of its employees cast upon it no unconstitutional burden.

Assuming, as we do, that the Home Owners' Loan Corporation is clothed with the same immunity from state taxation as the government itself, we cannot say that the present tax on the income of its employees lays any unconstitutional burden upon it. All the reasons for refusing to imply a constitutional prohibition of federal income taxation of salaries of state employees, stated at length in the *Gerhardt* case, are of equal force when immunity is claimed from state income tax on salaries paid by the national government or its agencies. In this respect we perceive no basis for a difference in result whether the taxed income be salary or some other form of compensation, or whether the taxpayer be an employee or an officer of either a state or the national government, or of its instrumentalities. In no case is there basis for the assumption that any such tangible or certain economic burden is imposed on the government concerned as would justify a court's declaring that the taxpayer is clothed with the implied constitutional tax immunity of the government by which he is employed. That assumption, made in *Collector* v. *Day, supra,* and in *New York ex rel. Rogers* v. *Graves, supra,* is contrary to the reasoning and to the conclusions reached in the *Gerhardt* case and in *Metcalf & Eddy* v. *Mitchell, supra; Group No. 1 Oil Corp.* v. *Bass,* 283 U. S. 279; *James* v. *Dravo Contracting Co., supra; Helvering* v. *Mountain Producers Corp., supra; McLoughlin* v. *Commissioner,* 303 U. S. 218. In their light the assumption can no longer be made. *Collector* v. *Day, supra,* and *New York ex rel. Rogers* v. *Graves, supra,* are overruled so far as they recognize an implied constitutional immunity from income taxation of the salaries of officers or employees of the national or a state government or their instrumentalities.

So much of the burden of a non-discriminatory general tax upon the incomes of employees of a government, state or national, as may be passed on economically to that government, through the effect of the tax on the price level of labor or materials, is but the normal incident of the organization within the same territory of two governments, each possessing the taxing power. The burden, so far as it can be said to exist or to affect the government in any indirect or incidental way, is one which the Constitution presupposes, and hence it cannot rightly be deemed to be within an implied restriction upon the taxing power of the national and state governments which the Constitution has expressly granted to one and has confirmed to the other. The immunity is not one to be implied from the Constitution, because if allowed it would impose to an inadmissible extent a restriction on the taxing power which the Constitution has reserved to the state governments.

*Reversed.*

MR. CHIEF JUSTICE HUGHES concurs in the result.

MR. JUSTICE FRANKFURTER, concurring:

I join in the Court's opinion but deem it appropriate to add a few remarks. The volume of the Court's business has long since made impossible the early healthy practice whereby the Justices gave expression to individual opinions.[1] But the old tradition still has relevance when an important shift in constitutional doctrine is announced after a reconstruction in the membership of the Court. Such shifts of opinion should not derive from mere private judgment. They must be duly mindful of the necessary demands of continuity in civilized society.

---

[1] The state of the docket of the High Court of Australia and that of the Supreme Court of Canada still permits them to continue the classic practice of *seriatim* opinions.

488

A reversal of a long current of decisions can be justified only if rooted in the Constitution itself as an historic document designed for a developing nation.

For one hundred and twenty years this Court has been concerned with claims of immunity from taxes imposed by one authority in our dual system of government because of the taxpayer's relation to the other. The basis for the Court's intervention in this field has not been any explicit provision of the Constitution. The States, after they formed the Union, continued to have the same range of taxing power which they had before, barring only duties affecting exports, imports, and on tonnage.[2] Congress, on the other hand, to lay taxes in order "to pay the Debts and provide for the common Defense and general Welfare of the United States," Art. I, § 8, can reach every person and every dollar in the land with due regard to Constitutional limitations as to the method of laying taxes. But, as is true of other great activities of the state and national governments, the fact that we are a federalism raises problems regarding these vital powers of taxation. Since two governments have authority within the same territory, neither through its power to tax can be allowed to cripple the operations of the other. Therefore state and federal governments must avoid exactions which discriminate against each other or obviously interfere with one another's operations. These were the determining considerations that led the great Chief Justice to strike down the Maryland statute as an unambiguous measure of discrimination against the use by the United States of the Bank of the United States as one of its instruments of government.

The arguments upon which *McCulloch* v. *Maryland,* 4 Wheat. 316, rested had their roots in actuality. But they have been distorted by sterile refinements unrelated

---

[2] Article 1, § 10, U. S. Constitution.

to affairs. These refinements derived authority from an unfortunate remark in the opinion in *McCulloch* v. *Maryland.* Partly as a flourish of rhetoric and partly because the intellectual fashion of the times indulged a free use of absolutes, Chief Justice Marshall gave currency to the phrase that "the power to tax involves the power to destroy." *Id.,* at p. 431. This dictum was treated as though it were a constitutional mandate. But not without protest. One of the most trenchant minds on the Marshall court, Justice William Johnson, early analyzed the dangerous inroads upon the political freedom of the States and the Union within their respective orbits resulting from a doctrinaire application of the generalities uttered in the course of the opinion in *McCulloch* v. *Maryland.*[3] The seductive *cliché* that the power to tax involves the power to destroy was fused with another assumption, likewise not to be found in the Constitution itself, namely the doctrine that the immunities are correlative—because the existence of the national government implies immunities from state taxation, the existence of state governments implies equivalent immunities from federal taxation. When this doctrine was first applied Mr. Justice Bradley registered a powerful dissent,[4] the force of which gathered rather than lost strength with time. *Collector* v. *Day,* 11 Wall. 113, 128.

[3] *Weston* v. *City Council of Charleston,* 2 Pet. 449, 472–73.

[4] "I dissent from the opinion of the court in this case, because, it seems to me that the general government has the same power of taxing the income of officers of the State governments as it has of taxing that of its own officers. . . . In my judgment, the limitation of the power of taxation in the general government, which the present decision establishes, will be found very difficult of control. Where are we to stop in enumerating the functions of the State governments which will be interfered with by Federal taxation? . . . How can we now tell what the effect of this decision will be? I cannot but regard it as founded on a fallacy, and that it will lead to mischievous consequences." (11 Wall. 113, 128–29.)

490

All these doctrines of intergovernmental immunity have until recently been moving in the realm of what Lincoln called "pernicious abstractions." The web of unreality spun from Marshall's famous dictum was brushed away by one stroke of Mr. Justice Holmes's pen: "The power to tax is not the power to destroy while this Court sits." *Panhandle Oil Co.* v. *Mississippi,* 277 U. S. 218, 223 (dissent). Failure to exempt public functionaries from the universal duties of citizenship to pay for the costs of government was hypothetically transmuted into hostile action of one government against the other. A succession of decisions thereby withdrew from the taxing power of the States and Nation a very considerable range of wealth without regard to the actual workings of our federalism,[5] and this, too, when the financial needs of all governments began steadily to mount. These decisions have encountered increasing dissent.[6] In view of the powerful pull of our decisions upon the courts charged with maintaining the constitutional equilibrium of the two other great English federalisms, the Canadian and the Australian courts were at first inclined to follow the earlier doctrines of this Court regarding intergovernmental immunity.[7]

[5] *E. g., Gillespie* v. *Oklahoma,* 257 U. S. 501; *Panhandle Oil Co.* v. *Mississippi,* 277 U. S. 218; *Macallen Co.* v. *Massachusetts,* 279 U. S. 620; *Indian Motocycle Co.* v. *United States,* 283 U. S. 570; *Burnet* v. *Coronado Oil & Gas Co.,* 285 U. S. 393; *N. Y. ex rel. Rogers* v. *Graves,* 299 U. S. 401; *Brush* v. *Commissioner,* 300 U. S. 352.

[6] *E. g.,* Mr. Justice Brandeis, dissenting, in *Jaybird Mining Co.* v. *Weir,* 271 U. S. 609, 615; Mr. Justice Holmes, dissenting, in *Panhandle Oil Co.* v. *Mississippi,* 277 U. S. 218, 222; Mr. Justice Stone, dissenting, in *Indian Motocycle Co.* v. *United States,* 283 U. S. 570, 580; Mr. Justice Roberts, dissenting, in *Brush* v. *Commissioner,* 300 U. S. 352, 374. See, also, Mr. Justice Black, concurring, in *Helvering* v. *Gerhardt,* 304 U. S. 405, 424.

[7] *Bank of Toronto* v. *Lambe,* 12 App. Cas. 575; *D'Emden* v. *Pedder,* 1 C. L. R. 91.

Both the Supreme Court of Canada and the High Court of Australia on fuller consideration—and for present purposes the British North America Act, 30 & 31 Vict., c. 3, and the Commonwealth of Australia Constitution Act, 63 & 64 Vict., c. 12, raise the same legal issues as does our Constitution [8]—have completely rejected the doctrine of intergovernmental immunity.[9] In this Court dissents have gradually become majority opinions, and even before the present decision the rationale of the doctrine had been undermined.[10]

The judicial history of this doctrine of immunity is a striking illustration of an occasional tendency to encrust unwarranted interpretations upon the Constitution and thereafter to consider merely what has been judicially said about the Constitution, rather than to be primarily controlled by a fair conception of the Constitution. Judicial exegesis is unavoidable with reference to an organic act like our Constitution, drawn in many particulars with purposed vagueness so as to leave room for the unfolding future. But the ultimate touchstone of constitutionality is the Constitution itself and not what we

---

[8] Especially is this true of the Australian Constitution. One of its framers, who afterwards became one of the most distinguished of Australian judges, Mr. Justice Higgins, characterized it as having followed our Constitution with "pedantic imitation." *Australasian Temperance & G. M. Life Assurance Society* v. *Howe*, 31 C. L. R. 290, 330.

[9] *Abbott* v. *City of St. John*, 40 Can. Sup. Ct. 597; *Caron* v. *The King*, (1924) A. C. 999; *Amalgamated Society of Engineers* v. *Adelaide Steamship Co.*, 28 C. L. R. 129; *West* v. *Commissioner of Taxation*, 56 C. L. R. 657.

[10] *E. g., James* v. *Dravo Contracting Co.*, 302 U. S. 134; *Helvering* v. *Mountain Producers Corp.*, 303 U. S. 376; *Helvering* v. *Gerhardt*, 304 U. S. 405.

have said about it.[11]  Neither *Dobbins* v. *Commissioners*, 16 Pet. 435, and its offspring, nor *Collector* v. *Day, supra*, and its, can stand appeal to the Constitution and its historic purposes.  Since both are the starting points of an interdependent doctrine, both should be, as I assume them to be, overruled this day.  Whether Congress may, by express legislation, relieve its functionaries from their civic obligations to pay for the benefits of the State governments under which they live is matter for another day.

MR. JUSTICE BUTLER, dissenting:

MR. JUSTICE McREYNOLDS and I· are of opinion that the Home Owners' Loan Corporation, being an instrumentality of the United States heretofore deemed im-- mune from state taxation, "it necessarily results," as held in *New York ex rel. Rogers* v. *Graves* (1937) 299 U. S. 401, "that fixed salaries and compensation paid to its officers and employees in their capacity as such are likewise immune"; and that the judgment of the state court, unquestionably required by that decision, should be affirmed.

From the decision just announced, it is clear that the Court has overruled *Dobbins* v. *Commissioners of Erie County* (1842) 16 Pet. 435; *Collector* v. *Day* (1871) 11 Wall. 113; *New York ex rel. Rogers* v. *Graves, supra*, and *Brush* v. *Commissioner* (1937) 300 U. S. 352.  Thus now it appears that the United States has always had power to tax salaries of state officers and employees and that

[11] Compare Taney, C. J., in *Passenger Cases*, 7 How. 283, 470: "I . : . am quite willing that it be regarded as the law of this court, that its opinion upon the construction of the Constitution is always open to. discussion when it is supposed to have been founded in error, and. that its judicial authority should hereafter depend altogether on ·the force of the reasoning by which it is supported."

similarly free have been the States to tax salaries of officers and employees of the United States. The compensation for past as well as for future service to be taxed and the rates prescribed in the exertion of the newly disclosed power depend on legislative discretion not subject to judicial revision. Futile indeed are the vague intimations that this Court may protect against excessive or destructive taxation. Where the power to tax exists, legislatures may exert it to destroy, to discourage, to protect or exclusively for the purpose of raising revenue. See e. g. *Veazie Bank* v. *Fenno,* 8. Wall. 533, 548; *McCray* v. *United States,* 195 U. S. 27, 53 *et seq.; Magnano Co.* v. *Hamilton,* 292 U. S. 40, 44 *et seq.; Cincinnati Soap Co.* v. *United States,* 301 U. S. 308.

Appraisal of lurking or apparent implications of the Court's opinion can serve no useful end for, should occasion arise, they may be ignored or given direction differing from that at first seemingly intended. But safely it may be said that presently marked for destruction is the doctrine of reciprocal immunity that by recent decisions here has been so much impaired.