## In re Public Salary Tax Act

RUTTER, Deputy Attorney General, February 2, 1940. —You have requested this department to advise you what obligation, if any, rests upon the Commonwealth, or any of the departments, boards, or commissions thereof, with respect to: (1) The Public Salary Tax Act of April 12, 1939, 53 Stat. at L. 574, insofar as it amends the Federal income tax laws, relating to the definition of "gross income", 26 U. S. C. §22(*a*) ; and (2) in view of the Public Salary Tax Act of 1939, supra, with respect to section 147 of the Revenue Act of May 10, 1934, 48 Stat. at L. 680, 726, 26 U. S. C. §147, which relates to information to be supplied by employers to the Federal Government, of salaries paid by them.

The Public Salary Tax Act of 1939 enlarged the term "gross income", as used in the Federal income tax laws, 26 U. S. C. §22, to include salaries, wages, and compensation received for personal service as an officer or employe of a State, or any political subdivision thereof, or any agency or instrumentality thereof.

Section 147 of the Revenue Act of May 10, 1934, supra, provides, in part, that:

". . . All persons . . . making payment to another person . . . of $1,000 or more in any taxable year . . . shall render a true and accurate return . . . setting forth the amount . . . and the name and address of the recipient of such payment."

The word "persons", as used above, does not appear, by any relevant statutory definition, to include a sovereign State of the United States; nor would it, otherwise. Therefore, there would seem to be no statutory duty imposed upon the Commonwealth of Pennsylvania, as an employer, to file any return under section 147.

By letter of January 18, 1940, the Commissioner of Internal Revenue addressed Governor Arthur H. James to the effect that the Commonwealth, *in compliance with section 147 of the Revenue Act of 1934,* supra, must file such returns on form 1099, accompanied by a return on form 1096. We are at a loss to know where, in said section 147, the commissioner finds any authority for his request.

To the same import as that of the commissioner, are letters from the Collector of Internal Revenue of the First Collection District of Pennsylvania, addressed to the Governor, and to you, as Budget Secretary.

It follows, therefore, that the authority of the collector, or the commissioner, to make the request referred to, must derive from regulations established by the United States Treasury Department. The latest available of these are Regulations 94; and therein is contained no such authority. No later regulations have been called or submitted to our attention.

The traditional immunity to tax of the salaries of employes of the several States, by the United States, had its remote origin in the law of intergovernmental relations, begun in McCulloch v. State of Maryland et al., 4 Wheat. (17 U. S.) 316, 431 (1819), wherein it was held that a State cannot impose taxes upon instrumentalities constitutionally created by the Federal Government, unless Congress consents thereto. It was in this case that Mr.

Chief Justice Marshall uttered the famous dictum, "the power to tax involves the power to destroy". The absolutism of this fatalistic admonition was later qualified by Mr. Justice Holmes, who said, in Panhandle Oil Co. v. Mississippi ex rel., 277 U. S. 218, 223, 72 L. ed. 857, 859, 48 S. Ct. 451, 56 A. L. R. 583 (1928) (dissent) : "The power to tax is not the power to destroy while this Court sits."

The more immediate origin of this freedom from taxation by the Federal Government of compensation paid employes by a State, and conversely, the taxation by a State of Federal salaries, was in The Collector v. Day, 11 Wall. (78 U. S.) 113, 20 L. ed. 122 (1871), wherein it was held that the United States could not impose a tax upon the salary of a State judge; although in Dobbins v. The Commissioners of Erie County, 16 Pet. (41 U. S.) 435, 10 L. ed. 1022 (1844), it was decided that a State could not tax the salary or emoluments of an officer of the United States.

In short, neither government, State or Federal, could tax the salaries of employes of the other.

This doctrine of our constitutional law was reëxamined and abandoned in Graves et al., etc., v. New York ex rel., 306 U. S. 466, 83 L. ed. 927, decided March 27, 1939. As a result, insofar as the United States was concerned, the Public Salary Tax Act of 1939, supra, was enacted by Congress.

The power to tax is a prime attribute of sovereignty. The United States possesses this power insofar as the Constitution delegates the power to the Government. The several States possess the power inherently. But, except within the Constitution, neither can a State tax the Government nor can the latter tax the former; and the same rule applies to instrumentalities of either: McCulloch v. State of Maryland et al., supra. And, now, either may tax the salaries of employes of the other: Graves et al., etc., v. New York ex rel., supra.

But to require the Commonwealth to submit reports and returns to the Federal Government, such as those requested by the commissioner and collector, as hereinbefore mentioned, would be placing a burden upon the Commonwealth by the Government.

In a memorandum by you to the Governor, dated January 9, 1940, you say "that the State would have to file one of these reports [form 1099] for practically every State employe, of whom there are more than 30,000." It is self-evident that to do this work would entail special outlay of funds by the Commonwealth, to pay those of its employes who would be engaged in doing it. In our opinion, the Commonwealth cannot be compelled to do this. It is of interest to note that the Attorney General of the State of Michigan has ruled likewise in an opinion addressed to the Auditor General of that State on November 20, 1939. Also, in an opinion by this department of December 14, 1914, Opinions of the Attorney General, 1913-14, page 409, 413, Federal Tax, 43 Pa. C. C. 285 (1914), it was ruled:

"The Federal Government cannot by law impose any specific duties upon State officials with reference to the collection of the tax provided by the Act of Congress."

This decision was upon the question of whether licenses issued by the Commonwealth's Insurance Department need have affixed thereto Federal revenue stamps.

However, we believe the Commonwealth's records should be opened to the Federal Government to the extent necessary for the latter to obtain the information it requests. Such action on the part of the Commonwealth would, presumably, cause it no extra expense.

Of course, as a matter of comity and coöperation between State and Federal governments, it may be advisable and proper policy for the Commonwealth to do as requested. Upon this we express no opinion, as it is neither our duty nor our proper function. In States wherein income taxes obtain, the answer would appear

obvious; reciprocal exchange of information between such States and the Federal Government would seem the sensible and natural course of procedure, for all governments would benefit. In States such as ours, which have no income tax—but which may have in the future—the question is one of policy to be decided by the executive or legislative branches of the Commonwealth, or by both.

It is the opinion of this department, therefore, and you are accordingly advised, that you are under no legal obligation to prepare and file forms 1099 and 1096, as requested by the Commissioner of Internal Revenue and the Collector of Internal Revenue of the First Collection District of Pennsylvania (or by the collector of any other district), with respect to compensation paid by the Commonwealth, or any of its departments, boards or commissions, to employes thereof.