484 P.2d 221

Rosalind McCLANAHAN, Individually and On Behalf of All Others Similarly Situated, Appellant,

v.

The STATE TAX COMMISSION of Arizona, Appellee.

1 CA–CIV 1316.

Court of Appeals of Arizona, Division 1, Department B.

April 28, 1971.

Rehearing Denied June 8, 1971.

Review Denied Sept. 21, 1971.

Dinebeiina Nahiilna Be Agaditahe, by Theodore Mitchell, Bruce Bridegroom and Donald Juneau, Window Rock, for appellant.

Gary K. Nelson, Atty. Gen., by James D. Winter, Asst. Atty. Gen., Phoenix, for appellee.

JACOBSON, Presiding Judge.

██ Are Navajo Indians living and working within the confines of that portion of the Navajo Indian Reservation lying within the State of Arizona, subject to the Arizona State Individual Income Tax laws?

Plaintiff-appellant, Rosalind McClanahan, brought an action in Apache County, Arizona, on behalf of herself and all others similarly situated,[1] against the State Tax Commission of Arizona, seeking a refund of $16.20 withheld by her employer during the taxable year 1967 as Arizona income tax, against which the State of Arizona claimed an alleged tax liability of $11.84. Plaintiff's complaint alleged that she is a Navajo Indian and that at all times during the tax year 1967 she resided on, and all her income for that year was derived from sources within the confines of, the Navajo Indian Reservation. By reason of her status and the source of her income, plaintiff contends she is not subject to the assessment, collection or retention of the Arizona tax on income collected under the authority of A.R.S. § 43–101 et seq.[2]

The defendant State Tax Commission filed a motion to dismiss for failure to state a claim for relief pursuant to Rule 12(b), Rules of Civil Procedure, which was granted. Plaintiff appealed from the judgment of dismissal of her complaint.

██ For the purposes of this appeal, we must consider the facts pled in plaintiff's complaint as true. Lakin Cattle Co. v. Engelthaler, 101 Ariz. 282, 419 P.2d 66 (1966).

Plaintiff does not contend that she is not a "resident" of the State of Arizona, within the meaning of the Arizona state tax law, but bases her theory of non-taxability by the State of Arizona primarily upon the oft-quoted pronouncement of the United States Supreme Court in Worcester v. Georgia, 31 U.S. (6 Pet.) 515, 8 L.Ed. 483 (1832):

> "The Cherokee [Navajo] Nation * * * is a distinct community occupying its own territory * * * in which the laws of Georgia [Arizona] can have no force."

However, it is generally conceded, even by the plaintiff here, that the relationship of the Indian, be he reservation oriented or otherwise, to the rest of the citizens of the United States and to the states themselves,

---

1. It not being necessary for a determination of the issues in this matter to determine whether plaintiff may properly under our statutes maintain this as a class action, we decline to do so. *See* Rule 23, Ariz.R.Civ.P., 16 A.R.S.

2. A.R.S. § 43–102, subsec. A, as amended, provides in part:
 "There shall be levied, collected, and paid for each taxable year upon the entire net income of * * * every resident of this state * * * taxes in the following amounts. * * *"

has drastically changed in the approximate 140 years since Worcester v. Georgia. This changed relationship has been reflected in decisions delineating the State-Indian status.

"Over the years this original concept of tribal sovereignty has been modified to permit application of state law to reservation Indians in matters *not considered essential* to tribal self-government, but the basic principle that the Indian tribes retain exclusive jurisdiction over *essential* matters of reservation government, in the absence of specific Congressional limitation, has remained." Arizona ex rel. Merrill v. Turtle, 413 F.2d 683 (9th Circuit 1969), cert. denied, 396 U.S. 1003, 90 S.Ct. 551, 24 L.Ed.2d 494 (1970). (emphasis added)

To determine the effectiveness of state laws on reservation Indians " * * * the question has always been whether the state action infringed on the right of the Reservation Indians to make their own laws and be ruled by them." Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959). *Williams* also speaks in terms of "the internal affairs of the Indians" remaining "exclusively" within the jurisdiction of the tribal government.

■ It is also apparent from reading the State-Indian cases, that the extent of control that a state may exercise over Indians residing within its borders is in direct relationship to the amount of tribal government in existence which could affect that Indian. Thus, in Leahy v. State Treasurer of Oklahoma, 297 U.S. 420, 56 S.Ct. 507, 80 L.Ed. 771 (1936) and in Oklahoma Tax Commission v. United States, 319 U.S. 598, 63 S.Ct. 1284, 87 L.Ed. 1612 (1943), the State of Oklahoma was allowed to impose a state tax on a pro rata share of tribal income and an estate tax on Indians' estates where "these Indians have no effective tribal autonomy * * * and * * * are actually citizens of the State with little to distinguish them from all other citizens except for their limited property restrictions and

their tax exemptions." Oklahoma Tax Commission v. United States, *supra*.

Likewise, Alaska state fishtrap laws were applied to the Metlakatla Indians who have no reservation in the self-government sense because "the principle of Indian national sovereignty enunciated in Worcester v. Georgia * * * does not apply to them." Metlakatla Indian Community v. Egan, 369 U.S. 45, 82 S.Ct. 552, 7 L.Ed.2d 562 (1962).

A like result was reached in Organized Village of Kake v. Egan, 369 U.S. 60, 82 S.Ct. 562, 7 L.Ed.2d 573 (1962), dealing with non-reservation Indians.

Applying the rationale of these decisions it is apparent that the infringement referred to in Williams v. Lee, *supra*, is not whether the Arizona state income tax infringes on plaintiff's rights as an individual Navajo Indian, but whether such a tax infringes on the rights of the Navajo tribe of Indians to be self-governing. In making this determination, we must first make an analysis of the nature of a net income tax. A workable analysis was first expressed in Black on Income and Other Federal Taxes (Fourth Edition) as quoted in Poorman v. State Board of Equalization, 99 Mont. 543, 45 P.2d 307 (1935):

" 'An income tax is distinguished from other forms of taxation in this respect: that it is not levied upon property, nor upon the operations of trade or business or the subjects employed therein, nor upon the practice of a profession or the pursuit of a trade or calling, but upon the acquisitions of the taxpayer arising from one or more of these sources, or all combined, annually or at other stated intervals, and generally, but not necessarily, upon only the excess of such acquisitions over a certain minimum sum.' "

An income tax has been said to be a personal tax, Pennsylvania Cement Co. v. Bradley Contracting Co., 274 F. 1003 (S.D. N.Y.1960), assessed upon the income of the person. Young v. Illinois Athletic Club, 310 Ill. 75, 141 N.E. 369 (1923).

Because of the nature of a net income tax we are not persuaded by the reasoning of those cases dealing with the attempt by the state to control or affect Indian real property. *See* The Kansas Indians, 72 U.S. (5 Wall.) 737, 18 L.Ed. 667 (1866); Your Food Stores, Inc. (NSL) v. Village of Espanola, 68 N.M. 327, 361 P.2d 950 (1961).

■ Having previously determined that the prohibition against applying state law to reservation Indians was not intended as a prohibition against individual infringement, but deals with interference with tribal autonomy we have no difficulty in holding that the fact that the plaintiff is a Navajo Indian and is required to pay a personal tax, does not in and of itself make such a tax ineffective. Nor do we believe the fact that plaintiff as a Navajo Indian is required to pay the income tax on income derived solely from sources within the reservation results in an infringement on the Navajo tribe's right of self government. In determining whether such an infringement exists, we are aided by an examination of those early cases dealing with the federal-state dichotomy of income taxation. Thus, as was held in Helvering v. Gerhardt, 304 U.S. 405, 58 S.Ct. 969, 82 L.Ed. 1427 (1938), when dealing with the problem of whether state employees were required to pay federal income taxes and the extent that such taxation infringed upon the sovereignty of the state:

> "Even though, to some unascertainable extent, the tax deprived the state of the advantage of paying less than the standard rate for the services which they engage, *it does not curtail any of those functions which have been thought hitherto to be essential to their continued existence as states.*
>
> "[W]e decide only that the present tax neither precludes nor threatens unreasonably to obstruct any function essential to the continued existence of the state government." (emphasis added)

Likewise, the corresponding right of a state to levy an income tax upon an employee of the federal government was upheld in Graves v. New York ex rel. O'Keefe, 306 U.S. 466, 59 S.Ct. 595, 83 L. Ed. 927 (1939). This case, in attempting to determine whether the State income tax infringed upon the sovereignty of the Federal Government, stated:

> "The present tax is a non-discriminatory tax on income applied to salaries at a specified rate. It is not in form or substance a tax upon the [United States Government], or its property or income, nor is it paid by the * * * government from their funds. It is measured by income which becomes the property of the taxpayer when received as compensation for his services; and the tax laid upon the privilege of receiving it is paid from his private funds and not from the funds of the government, either directly or indirectly. *The theory, which once won a qualified approval, that a tax on income is legally or economically a tax on its source, is no longer tenable* [citations omitted]." (emphasis added)

If then, an income tax by the Federal Government or a state upon the employee of the other does not interfere with the essential function of the government whose employee is being taxed, how can it be seriously argued that an income tax by the State of Arizona upon a Navajo Indian, regardless of his employer, causes an impairment of the right of the Navajo tribe to be self governing? We believe it cannot. Nor are we dissuaded from this proposition by Warren Trading Post. Co. v. Arizona State Tax Comm., 380 U.S. 685, 85 S.Ct. 1242, 14 L.Ed.2d 165 (1965) relied upon by plaintiff. This case held that the State of Arizona could not impose a gross sales tax upon the privilege of operating a trading post within the confines of the Navajo Reservation. In our opinion, the rationale of that decision was that the Federal Government by licensing Indian traders and regulating them "has taken the business of Indian trading on reservations so fully in hand that no room remains for state laws imposing additional burdens upon traders." We find no corresponding

preemption of the field of taxation by Congress to make this reasoning germane to the taxation of Navajo reservation Indians by the State of Arizona.

Plaintiff likewise argues that the Arizona Enabling Act (§ 20, 36 Stat. 569) and the Arizona Constitution (Art. XX, Fourth), A.R.S. require a ruling that Navajo Indians are not subject to Arizona State income taxes. The language of the Enabling Act and the Constitution is the same and is as follows:

"The people inhabiting this State do agree and declare that they forever disclaim all right and title to the unappropriated and ungranted public lands lying within the boundaries thereof and to all lands lying within said boundaries owned or held by any Indian or Indian tribes, the right or title to which shall have been acquired through or from the United States or any prior sovereignty, and that, until the title of such Indian or Indian tribes shall have been extinguished, the same shall be, and remain, subject to the disposition and under the absolute jurisdiction and control of the Congress of the United States."

 We do not believe that this language defeats the tax in question for two reasons. First, the prohibition deals with disclaimer of title to land owned or held by an Indian or an Indian tribe, and as we have previously discovered, an income tax is not a tax on real property. By the imposition of the income tax here involved, the State of Arizona is not asserting any ownership or proprietary interest in Indian lands. Second, as was pointed out in Organized Village of Kake v. Egan, 369 U.S. 60, 82 S.Ct. 562, *supra*, the "absolute jurisdiction and control" language of the Act and Constitution was "not intended to oust the state completely from regulation of Indian 'property'. * * *" Thus "state laws may be applied to Indians unless such application would interfere with reservation self-government or impair a right granted or reserved by federal law," 369 U.S at 75, 82 S.Ct. at 571, regardless of

the prohibition and disclaimer language of the Constitution and Act.

This then brings us to the two jurisdictions which have been faced with this exact problem. In Ghahate v. Bureau of Revenue, 80 N.M. 98, 451 P.2d 1002 (1969), the New Mexico Court of Appeals held that the State of New Mexico could validly tax the income of reservation Indians earned on the reservation. However in that decision the parties stipulated that the tax involved would not constitute an infringement upon tribal rights. Therefore, while we agree with a great deal of what is stated in that opinion, we do not find the decision of great assistance in resolving the issues at hand.

The Supreme Court of Minnesota in the case of Commissioner of Taxation v. Brun, 286 Minn. 43, 174 N.W.2d 120 (1970) came to exactly the opposite conclusion, holding that the State of Minnesota could not impose its income tax on a member of the Red Lake Band of Chippewa Indians who was employed at a tribal sawmill within the confines of the Reservation. On the crucial issue of infringement, the Court held:

"It cannot be argued that siphoning off part of the earnings from employees of a sawmill operated for the benefit and welfare of enrolled members of the tribe does not interfere with the tribal right of self-government."

Apparently the Minnesota Court is either holding that an income tax is a tax on the source of income, which has been expressly discredited or it is assuming that an income tax is a tax on property, which is also incorrect. In any event, the mere statement that an income tax is an infringement, without analyzing the issue, does not make it so. For this reason we disagree with the Minnesota Court.

At time of oral argument counsel for plaintiff conceded that tax monies of the State of Arizona were being expended for education and welfare within the confines of the Navajo Reservation and that Navajo Indians were the beneficiaries of these ex-

**457**

penditures. This fact is mentioned merely to point out that one of the fundamental concepts of governmental sovereignty is the obligation to provide services with the corresponding right to tax its "residents" to pay therefor.

For the reasons herein stated, it is our opinion that because of the nature of an income tax, its imposition upon income earned by a reservation Indian from sources within the reservation is not an infringement of the right of self-government by the tribe of which the taxpayer is a member and therefore such a tax is a valid exercise of a state law within the confines of the Indian reservation.

The judgment of the trial court is affirmed.

HAIRE, J., and MORRIS ROZAR, Judge of the Superior Court, concur.

Note: Judge WILLIAM E. EUBANK, having requested that he be relieved from consideration of this matter, Judge MORRIS ROZAR, Maricopa County Superior Court, was called to sit in his stead and participate in the determination of this decision.