490 P.2d 846

Edmund D. KAHN and Kathleen M. Kahn, husband and wife, Appellants,

v.

ARIZONA STATE TAX COMMISSION, Appellee.

No. 2 CA–CIV 1013.

Court of Appeals of Arizona, Division 2.

Nov. 24, 1971.

Rehearing Denied Dec. 23, 1971.

Review Denied Jan. 18, 1972.

Edmund D. Kahn, Tucson, for appellants.

Gary K. Nelson, Atty. Gen., by James D. Winter, Asst. Atty. Gen., Phoenix, for appellee.

KRUCKER, Chief Judge.

This is an action for the refund of Arizona State Income taxes paid under protest by the plaintiffs-appellants. Plaintiffs also claim a deduction for moving expenses.

Two questions are raised by this appeal:

(1) May the State of Arizona impose its state income tax upon plaintiffs

who are non-Indian residents and employees of the Navajo Indian Reservation?

(2) Are plaintiffs entitled to deduct their moving expenses as a necessary expense for the production of income under A.R.S. § 43–123, as amended?

The following statement of the facts was certified to this court by the court below. Plaintiffs-appellants, husband and wife, are non-Indians who, during the taxable years in question, earned income upon the Navajo Indian Reservation within the boundaries of Arizona. Plaintiff Edmund D. Kahn earned the taxable income at issue on behalf of the community. During this period the plaintiffs-appellants paid Arizona State Income taxes under protest and now seek a refund of these taxes and claim a deduction for moving expenses as an expense incurred for the production of income.

Plaintiff Edmund D. Kahn was employed first as a law clerk and then later as an attorney for the Navajo Tribe. He was subject to the approval and regulations of the United States Secretary of the Interior governing employment of attorneys by Indian Tribes. Plaintiff's salary was paid out of Indian Tribal Funds.

In September, 1969, plaintiffs moved from the Navajo Reservation to Tucson, Arizona in order for Mr. Kahn to undertake new employment.

The Superior Court granted defendant-appellee's motion to dismiss for failure to state a claim upon which relief could be granted pursuant to Rule 12(b), Rules of Civil Procedure, 16 A.R.S., and judgment of dismissal was entered against plaintiffs. This appeal followed.

Appellants have raised three contentions on appeal in relation to the state taxation issue: (1) That the Navajo Indian Reservation is a federal enclave and the State of Arizona is thereby precluded from imposing this tax on plaintiffs who earned income and resided within this enclave. (2) That the Navajo Reservation is subject only to the plenary power of Congress as well as the residual power of the Navajo Tribe and therefore the State of Arizona is precluded from taxing plaintiffs' income. (3) That plaintiff Edmund D. Kahn earned his income as a tribal attorney and was subject to the regulations of the United States Secretary of the Interior and that the Federal Government has preempted this area so as to preclude the State of Arizona from taxing plaintiffs' income.

A recent case out of Division One, Department B of this court would appear to be directly determinative of the first issue raised by appellants. McClanahan v. State Tax Commission, 14 Ariz.App. 452, 484 P. 2d 221 (1971) held that Navajo Indians living and working within the confines of the Navajo Reservation of Arizona are subject to the Arizona State Individual Income Tax. And if Navajo Indians are subject to the State Income Tax, then *a fortiori* appellants in the case at bench, as non-Indians are subject to the tax. Because we believe *McClanahan* successfully answers most of appellants' contentions, we will devote more discussion to those contentions not dealt with in that opinion.

## FEDERAL ENCLAVE

■ Accepting, *arguendo*, plaintiffs' definition of a federal enclave as "those areas where laws of the states can have no force or effect, save as is permitted by the Congress of the United States * * *", plaintiffs offered no factual basis in support of this contention which would have precluded the summary disposition which was made.

Plaintiffs contend that the Disclaimer Clause of the Arizona Constitution (Article XX, paragraph Fourth, A.R.S.) grants "absolute" jurisdiction over Indian lands to the United States and that the Navajo Reservation is therefore a federal enclave. A closer reading of Article XX, paragraph Fourth reveals that it does indeed grant *"absolute" jurisdiction over the title to the lands* but absolute is not synonymous with the "exclusive" jurisdiction granted in

*Humble Pipe Line Company,* infra, and does not thereby make the Navajo Reservation a federal enclave.

Article XX, Fourth disclaims:

"* * * all right and title * * * to all lands * * * owned or held by any Indian or Indian tribes * * * the same shall be, and remain, subject to the disposition and under the absolute jurisdiction and control of the Congress of the United States."

The United States Supreme Court in Organized Village of Kake v. Egan, 369 U.S. 60, 82 S.Ct. 562, 7 L.Ed.2d 573 (1962) distinguished the term "absolute jurisdiction" as "meaning undiminished, not exclusive."

The Supreme Court discussed the jurisdiction of the United States in respect to Indian lands in Surplus Trading Co. v. Cook, 281 U.S. 647, 50 S.Ct. 455, 74 L.Ed. 1091 (1930):

"It is not unusual for the United States to own within a state lands which are set apart and used for public purposes. Such ownership and use without more do not withdraw the lands from the jurisdiction of the state. On the contrary, the lands remain part of her territory and within the operation of her laws, save that the latter cannot affect the title of the United States or embarrass it in using the lands or interfere with its right of disposal.

A typical illustration is found in the usual Indian reservation set apart within a state as a place where the United States may care for its Indian wards and lead them into habits and ways of civilized life. Such reservations are part of the state within which they lie, and her laws, civil and criminal, have the same force therein as elsewhere within her limits, save that they can have only restricted application to the Indian wards. Private property within such a reservation, if not belonging to such Indians, is subject to taxation under the laws of the state." 281 U.S. at 650–651, 50 S.Ct. at 456.

The Supreme Court of Arizona has held in Porter v. Hall, 34 Ariz. 308, 321, 271 P. 411, 415 (1928), that the Indian Reservations of Arizona are within the political and governmental boundaries of the State and that the exception in the Constitution is proprietary:

"We have no hesitancy in holding, therefore, that all Indian reservations in Arizona are within the political and governmental, as well as geographical boundaries of the state, and that the exception set forth in our Enabling Act [same as Art. XX, Fourth] applies to the Indian lands considered as property, and not as a territorial area withdrawn from the sovereignty of the state of Arizona."

In Humble Pipe Line Company v. Waggonner, 376 U.S. 369, 84 S.Ct. 857, 11 L. Ed.2d 782 (1964), Louisiana was held to be without jurisdiction to levy an *ad valorem* tax on privately-owned property situated on Barksdale Air Force Base. The important distinction between *Humble* and the case presently before the court is Louisiana's cession of "exclusive" jurisdiction over Barksdale Air Force Base to the United States. The court in *Humble* further held:

"* * * the United States acquired exclusive jurisdiction when the land was ceded to it with consent of the State (except for the State's express reservation as to civil and criminal process) just as if the United States had acquired its title by negotiation and payment of a money consideration." 376 U.S. at 372, 84 S.Ct. at 859.

Plaintiffs would next have us believe that the *Buck Act,* 4 U.S.C.A. §§ 105–110 (1964) offers a definition of "federal enclave" which would include the Navajo Reservation. The definition is actually of "Federal Area" which is clearly not synonymous with federal enclave:

"(e) The term 'Federal area' means any land or premises held or acquired by or for the use of the United States or any department, establishment, or agency of the United States; and any Federal

area, or any part thereof, which is located within the exterior boundaries of any State, shall be deemed to be a Federal area located within such State." 4 U.S.C.A. § 110.

And the United States Supreme Court has already interpreted the Buck Act as inapplicable to Indian Reservations in Warren Trading Post Co. v. Arizona State Tax Commission.[1] Even were we to accept the "federal area" definition as applicable to the Navajo Indian Reservation, any further consideration of plaintiffs' contention would be precluded by § 106 of the same act:

"(a) No person shall be relieved from liability for any income tax levied by any State, or by any duly constituted taxing authority therein, having jurisdiction to levy such a tax, by reason of his residing within a Federal area or receiving income from transactions occurring or services performed in such area; and such State or taxing authority shall have full jurisdiction and power to levy and collect such tax in any Federal area within such State to the same extent and with the same effect as though such area was not a Federal area."

We therefore find no merit in plaintiffs' contention that the Navajo Indian Reservation is a federal enclave under the exclusive jurisdiction of the United States.

## LAW APPLIED TO INDIAN RESERVATIONS GENERALLY

■■ Appellants next argue that federal authority over Indian areas is absolute and that Arizona's only power over the Navajo Reservation is that expressly granted by the Federal Government, citing United States v. Kagama, 118 U.S. 375, 6 S.Ct. 1109, 30 L.Ed. 228 (1886); Blue Jacket v. Commissioners of Johnson County, 72 U.S. (5 Wall.) 737, 18 L.Ed. 667 (1867); Worcester v. Georgia, 31 U.S. (6 Pet.) 515, 8 L.Ed. 483 (1832). Even in 1886 in *Kagama* the Indians were still de-

scribed as "wards" of the federal government owing no allegiance to the States and receiving from them no protection. As was pointed out in *McClanahan,* supra, the relationship of Indians to the States and the United States has changed drastically since these early cases.

The present test of the application of state laws to reservation Indians was set out by the late Justice Black in Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959). In *Williams,* the Supreme Court prescribed the general rule that state laws apply unless such application would interfere with reservation self-government or impair a right granted or reserved by federal law.

Appellants cite Warren Trading Post Co. v. Arizona State Tax Commission, 380 U.S. 685, 85 S.Ct. 1242, 14 L.Ed.2d 165 (1965) in support of their contention that the state income tax applied to them violates Navajo self-government. As *McClanahan* points out, the tax in *Warren* was not decided to be violative of tribal self-government. *Warren* was a pre-emption case in which the State was prevented from taxing the operation of a trading post because federal regulation of Indian Traders has been so comprehensive that "no room remains for state laws imposing additional burdens upon traders." The *Warren* rationale is inapplicable in the instant case as there has been no corresponding pre-emption of the field of taxation, *McClanahan,* supra. This court also finds no merit in appellants' argument that the federal government's regulating the hiring of lawyers for the Indian tribes amounts to pre-emption and thereby prohibits the tax here in question. We find the state income tax to be no interference with the policies of the federal government in regulating the hiring of lawyers for the Indian tribes.

This court agrees with the court in *McClanahan* that the federal-state dichotomy of income taxation is closely analogous to the infringement of self-government

---

1. 380 U.S. 685, 85 S.Ct. 1242, 1246, 14 L.Ed.2d 165, 169 (1965). See note 18.

here alleged. In Helvering v. Gerhardt, 304 U.S. 405, 58 S.Ct. 969, 82 L.Ed. 1427 (1938), state employees were held to be required to pay federal income taxes and the inverse right of states to levy an income tax upon an employee of the federal government was upheld in Graves v. New York ex rel. O'Keefe, 306 U.S. 466, 59 S. Ct. 595, 83 L.Ed. 927 (1939). Neither's tax was thought to be any unreasonable obstruction or threat to the existence of the other's government. We find no threat to the self-government of the Navajo tribe here.

While the Minnesota Supreme Court in Commissioner of Taxation v. Brun, 286 Minn. 43, 174 N.W.2d 120 (Minn.1970) held that Minnesota could not impose its income tax upon members of the Red Lake Band of Chippewa Indians who were employed within the boundaries of the reservation, it was careful to emphasize the "unique status" of this particular tribe. The federal law which conferred on the state, civil and criminal jurisdiction over other Indians in the state expressly exempted the Red Lake Reservation. The Minnesota court went on to say:

> "[I]t seems clear that the Red Lake Band of Chippewa Indians within the boundaries of its reservation enjoys the autonomy that originally existed as to all Indians on reservations when Worcester v. Georgia, 31 U.S. 515 (6 Pet. 515), 8 L.Ed. 483, was decided by the United States Supreme Court." 174 N.W.2d at 122.

The unique autonomy of the Red Lake Reservation Tribe clearly distinguishes their case from the one at bench.

From the foregoing analysis the court has no hesitation in holding that state income taxes were properly withheld from appellants' wages.

## MOVING EXPENSES

■ The right to deduct expenses from income is a matter of legislative grace and does not exist in the absence of a statutory authorization. Arizona State Tax Commission v. Kieckhefer, 67 Ariz. 102, 191 P.

2d 729 (1948); Arizona State Tax Commission v. Phelps Dodge Corp., 53 Ariz. 252, 88 P.2d 79 (1939). The United States Internal Revenue Code prior to the addition of 26 U.S.C.A. § 217 treated moving expenses as a non-deductible personal expense. Wilson v. Commissioner of Internal Revenue, 412 F.2d 314 (6th Cir. 1969); Commissioner of Internal Revenue v. Dodd, 410 F.2d 132 (5th Cir. 1969).

Appellants contend that a deduction for moving expenses should be permitted under A.R.S. § 43–123, as amended, which reads in pertinent part as follows:

> "43–123. *Deductions from gross income —items deductible*
>
> (a) *Expenses*
>
> (2) *Non-trade or non-business expenses*
>
> In computing net income there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income."

Absent Arizona cases in point, we believe that the legislature intended decisions of the United States courts interpreting similar provisions in the United States Internal Revenue Code to be persuasive guides for the Arizona courts. A.R.S. § 43–199(d); *Kieckhefer,* supra; Arizona State Tax Commission v. Fagerberg, 59 Ariz. 29, 122 P.2d 212 (1942).

While § 217 was added to the Internal Revenue Code to specifically allow deduction of moving expenses incurred after January 1, 1964 Arizona made no such addition to its code. We therefore find *Dodd,* supra, and *Wilson,* supra, very persuasive in this regard. The taxpayer in *Dodd* attempted to deduct moving expenses resulting from his relocation within Standard Oil Company. It was there held that moving expenses incurred prior to January 1, 1964:

> " * * * are not deductible either as ordinary and necessary business expenses pursuant to section 162(a) [26 U.S.C.A.]

or as travel expenses while away from home pursuant to 162(a) (2). These expenses are non-deductible personal, living or family expenses pursuant to section 262. [Citation omitted]"

The taxpayer in *Wilson* sought to deduct expenses incurred in moving for the convenience of the husband's employer to a new location. He too was refused.

We find appellants' argument here even less persuasive than those cases where the taxpayers were required to move by their employer while the appellants here moved on their own initiative to seek new employment. The appellants are therefore not entitled to a deduction for moving expenses under A.R.S. § 43–123.

Judgment is therefore affirmed.

HATHAWAY and HOWARD, JJ., concur.