[Civil No. 4040.   Filed March 20, 1939.]

[88 Pac. (2d) 79.]

ARIZONA STATE TAX COMMISSION, Appellant, v. PHELPS DODGE CORPORATION, a Corporation, Appellee.

Mr. Joe Conway, Attorney General and Mr. Allan K. Perry, Special Assistant Attorney General, for Appellant.

Messrs. Ellinwood & Ross, Mr. William A. Evans and Mr. Denison Kitchel, for Appellee.

McALISTER, J.—The State Tax Commission levied an additional state income tax against the Phelps Dodge Corporation for the year 1936 and from that order the corporation appealed to the superior court

of Cochise county. That court held the additional assessment illegal and from this judgment the tax commission has appealed.

The facts out of which the controversy arose may, in so far as material, be briefly stated. Between 1933 and 1936 appellee was the owner of extensive mining properties situated in Cochise, Pima and Greenlee counties, and in January, 1935, it acquired additional properties of this same character located in Yavapai county, namely, those theretofore owned and operated by the United Verde Copper Company. Each of these properties consisted of patented and unpatented mines, real estate, improvements, plants, equipment and personal property, all of which was subject to taxation for state, county, city and district purposes, and the taxing officials of the state and its political subdivisions in which these respective properties were situated levied taxes thereon for the years 1933 to 1936, inclusive.

Appellee made an investigation of the valuations placed on its properties and on those of other taxpayers in the state, and after doing so came to the conclusion that its properties were assessed for each of the years mentioned in excess of their true cash value and that substantially all other property in the state was assessed at sixty per cent. of its true cash value and that by reason of this fact it was unjustly discriminated against and denied the equal protection of the law as guaranteed it by both the federal and state Constitutions. So, beginning with the year 1933 and annually thereafter up to and including 1936, appellee tendered to and paid the proper tax collecting authorities the amount of taxes payable on its properties for each of the said years, 1933 to 1936, inclusive, based on sixty per cent. of its true cash value as determined by it, and, prior to the time the balance would have become delinquent in each of these years, insti-

tuted action in the District Court of the United States for Arizona to enjoin the collection of taxes in excess of those due upon sixty per cent. of the true cash value of the said properties as determined by it. The state tax commission and the boards of supervisors, the assessor and the treasurer of the particular county in which the property involved is situated were made defendants in these actions, and in each instance they sought a dismissal upon the ground that appellee had an adequate remedy at law under section 3136, Revised Code of 1928, by paying the taxes and instituting suit to recover the portion claimed to be excessive, but the motion was denied. The actions covering the taxes for the years 1933 to 1935 were consolidated and heard on their merits in the summer of 1936, and on December 12th of that year the court entered its decree denying appellee the relief sought in all of them. In February, 1937, shortly after the denial of its motion for a new trial, appellee paid the full amount of the unpaid taxes for each of the years 1933 to 1936, inclusive, as assessed and levied upon all its properties, and, in addition, the interest thereon at the rate of ten per cent. per annum from the dates the taxes on the respective properties involved became delinquent. The total interest paid was $824,200.04 and of this sum $379,997.58 accrued during the year 1936. This payment was made pursuant to section 17, chapter 103, Session Laws of 1931, reading as follows:

" . . . All taxes shall bear interest from the time of delinquency at the rate of ten per cent per annum until paid, and a fraction of a month shall be counted as a whole month."

Appellee's income tax report for 1936 disclosed that its net income for that year was $6,842,249.20 and, according to the record, the tax on this sum, amounting to $341,977.46, was paid in full. One of the deductions

made by appellee from the gross income derived by it in Arizona in 1936 was the sum of $379,997.58, which was the interest that accrued on the delinquent portion of its taxes for that year and had been paid by it in February, 1937, following the decision of the United States District Court in the consolidated case. The tax commission made an audit of appellee's income tax report for 1936 and after doing so concluded that appellee was not entitled to deduct from its gross income during that year the interest paid on delinquent taxes for that period, namely, $379,997.58, and levied a tax thereon against appellee in the sum of $18,998.88, plus interest. It notified appellee of this assessment of additional income on December 9, 1937, and within the proper period thereafter appellee appealed that ruling to the superior court of Cochise county which set it aside. It is this order the tax commission has brought here for review.

The only question in the case is whether in making its income tax return for the year ending December 31, 1936, appellee was within its rights in deducting from its gross income for that year the $379,997.58 it paid as interest on the portion of its taxes that became delinquent during that twelve months. Under the income tax law of this state, chapter 8, First Special Session of the Eleventh Legislature, 1933, all income, except certain specifically authorized deductions, is taxable, and one claiming the right to deduct any item from his gross income must necessarily bring himself within the provisions authorizing such deductions. The expenses that may be deducted are enumerated in sections 10 and 11 of the act, and one of the seven items mentioned in the former is:

"(b) Other ordinary and necessary expenses actually paid within the year in the maintenance and

operation of the business, profession or occupation from which the income was derived.''

Section 11 provides that in addition to the deductions allowed in section 10, corporations may make two others, one of which is:

''(a) Interest paid within the year in the operation of the business from which the income is derived. . . .''

The holding of the trial court that the deduction was proper does not disclose whether this was, in its view, true because authorized by both or only one of these sections. Appellee contends that it was allowable under both, while appellant's position is that it was permitted by neither. The latter contends that it was not authorized by section 11, because the interest the statute requires delinquent taxes to bear is not interest within the true meaning of that term, but rather a penalty imposed by law for the taxpayer's failure to pay his taxes prior to their becoming delinquent, and to support this it cites *Biles* v. *Robey,* 43 Ariz. 276, 30 Pac. (2d) 841, in which a statement to this effect was made. Appellee claims, however, that the holding in that case is not, for certain reasons urged by it, controlling here, and, while there is perhaps some basis for this position, we think it unnecessary to discuss the proposition because under section 10 it is plain that the $379,997.58, whether treated as interest or penalty, was correctly deducted from appellee's gross income for 1936 as an ordinary and necessary expense incurred in the operation of its business.

The tax imposed by ''the income tax act of 1933'' is computed upon a taxpayer's ''net income,'' by which is meant his ''gross income'' less allowable deductions, and one of the several items which section 10 authorizes to be deducted is the ordinary and neces-

sary expenses actually paid in the maintenance and operation of the business from which the income is derived. The basis of the contention that the $379,-997.58 expended by appellee as interest on 1936 delinquent taxes falls within this designation and, therefore, constitutes an item deductible from its gross income for that year, is that appellee made an investigation as to the valuation placed on the properties of the state for taxation purposes and after doing so concluded that those belonging to it were assessed in excess of their true cash value, while substantially all other property in the state was assessed at sixty per cent. of such value. Being convinced that this was the situation and realizing that such a condition, if true, constituted a discrimination against it, appellee applied to the equalizing authorities to correct it by reducing the valuation of its properties to a point where it would be on an equality with all other property in the state. Failing to obtain this relief, it decided to secure a judicial review of the valuations placed upon its properties as compared with those on the other properties of the state, and in order to do this it tendered and paid the amount of taxes it admitted to be properly due and then instituted in the United States District Court for Arizona suits to enjoin collection of the excess. In doing this it evidently realized that if it were not successful in establishing the inequality in valuation it claimed existed, it would be compelled to pay the ten per cent. interest that would accrue on the disputed taxes during the pendency of the litigation, which, the facts disclose, totaled when paid in February, 1937, $824,-200.04, though we are here concerned only with that portion of this sum that became delinquent in 1936, namely, $379,997.58.

The payment of this interest, it seems clear, is within the meaning of the term, "ordinary and neces-

sary expenses,'' as used in section 10 of the income tax law, for any expenditure made in good faith for the purpose of benefiting the business from which it came is generally held to be an ordinary and necessary expense. In *A. Harris & Co.* v. *Lucas* (5 Cir.), 48 Fed. (2d) 187, 188, the court made the following statement concerning the meaning of this expression when used as it is here:

"It is evident that the words 'ordinary' and 'necessary' in the statute are not used conjunctively, and are not to be construed as requiring that an expense of a business to be deductible must be both ordinary and necessary in a narrow, technical sense. On the contrary, it is clear that Congress intended the statute to be broadly construed to facilitate business generally, so that any necessary expense, not actually a capital investment, incurred in good faith in a particular business, is to be considered an ordinary expense of that business. This in effect is the construction given the statute by the Treasury Department and the courts."

█ The necessity for an expenditure must be considered in the light of the conditions as they existed when it was made or incurred and not judged in retrospect. So, if appellee honestly felt, when it instituted the suits to equalize the valuations on its properties and permitted a portion of its taxes to become delinquent, that its business would be benefited by its doing so, the fact that the outcome of the litigation was not in line with expectation was immaterial. Many expenditures are made by business concerns that might be termed unnecessary if viewed retrospectively, such, for instance, as the cost of developing a mine which proves barren. An expenditure of this character is legitimate and, hence, deductible, though it may have been a complete loss. The fact that the expenditure did or did not result in bene-

fit to the business is not the criterion by which to determine its necessity.

Neither is the circumstance that an expenditure is seldom made or rarely incurred the test as to whether it is an ordinary expense within the meaning of section 10; the real test is whether the obligation was incurred by the taxpayer in good faith and in the furtherance of its business. When made under these circumstances the fact that it might arise only once in a lifetime makes it none the less an ordinary expense. Discussing this question, the Supreme Court used this language in *Welch* v. *Helvering,* 290 U. S. 111, 54 Sup. Ct. 8, 9, 78 L. Ed. 212:

" . . . Now, what is ordinary, though there must always be a strain of constancy within it, is none the less a variable affected by time and place and circumstance. Ordinary in this context does not mean that the payments must be habitual or normal in the sense that the same taxpayer will have to make them often. A lawsuit affecting the safety of a business may happen once in a lifetime. The counsel fees may be so heavy that repetition is unlikely. None the less, the expense is an ordinary one because we know from experience that payments for such a purpose, whether the amount is large or small, are the common and accepted means of defense against attack. Cf. *Kornhauser* v. *United States,* 276 U. S. 145, 48 Sup. Ct. 219, 72 L. Ed. 505. The situation is unique in the life of the individual affected, but not in the life of the group, the community, of which he is a part. At such times there are norms of conduct that help to stabilize our judgment, and make it certain and objective. The instance is not erratic, but is brought within a known type."

There can, of course, be no question but that it would have been beneficial to appellee's business, the same as would have been true of the business of any other taxpayer, to have been able to reduce its taxes by forty per cent., which complete success in its liti-

gation would have meant. And when it is remembered that appellee knew from the beginning that it would be compelled to pay ten per cent. interest on all its taxes that should become delinquent during the pendency of the litigation if it did not succeed in establishing discrimination against it in the matter of its valuations, there would seem to be no basis upon which the contention that appellee did not act in good faith in instituting and prosecuting the tax suits could rest. It is not at all likely that it would have taken the risk of paying, in addition to the delinquent tax itself, what in the end amounted to over eight hundred thousand dollars in interest thereon, unless it had felt that it had a good cause of action and a fair chance of winning it.

■ Appellant contends, however, that the payment of this interest, instead of being an "ordinary and necessary expense" was in fact "an extraordinary and unnecessary one," and to sustain this it states if appellee had paid its taxes when due no interest would have accrued and no expense of this character would have been incurred. It claims further that if appellee had sincerely believed that the valuations placed on its properties were too high it could have paid its taxes under protest and brought suit in the state courts under the provisions of section 3136, Revised Code of 1928, to recover the amount claimed to be excessive. Undoubtedly it could have taken this course had it desired to do so but it felt that such a proceeding did not give it an adequate remedy and points out several reasons why this is true. However, since there existed facts giving it the right to invoke the jurisdiction of the federal court, thus opening to it both state and federal tribunals, it is immaterial why it chose the latter instead of the state court. The fact that it was able to obtain in the federal court

a review of the question of the alleged discrimination against its properties in the matter of valuation without first paying the taxes under protest and then bringing suit to recover the amount claimed excessive, as it would have been required to do in a proceeding in the state court, does not, under the circumstances, mean that the actions filed by it in the federal court were not instituted in good faith. In exercising its right to choose between the two forms, appellee, as any other taxpayer similarly situated would have done, selected the one it thought would best serve its purpose; hence, the use of the federal instead of the state court cannot have the effect of changing the interest paid on delinquent taxes from an ordinary and necessary expense of appellee's business to a penalty or fine similar to that which one who violates some criminal or police statute is required to pay and which does not constitute a deductible item in arriving at net taxable income.

Inasmuch, therefore, as the $379,997.58 interest paid on the delinquent taxes for the year 1933 was incurred by appellee as an ordinary and necessary expense in the operation of its business, it was properly deducted from its gross income for that year, and from this it follows that the order of the trial court setting aside as illegal the levy of a tax thereon in the sum of $18,998.88 was correct. Hence the judgment is affirmed.

ROSS, C. J., and LOCKWOOD, J., concur.