804 P.2d 1328

**TUCSON ELECTRIC POWER CO.**

v.

**ARIZONA STATE DEPARTMENT OF REVENUE.**

No. TX 88–00721.

Tax Court of Arizona.

Jan. 15, 1991.

Fennemore Craig, P.C. by David T. Cox and Diane M. Evans, Phoenix, for plaintiff-appellant.

Attorney Gen. by Gail H. Boyd, Phoenix, for defendant-appellee.

## OPINION

MORONEY, Judge.

The Taxpayer is a public utility which supplies electrical power to consumers in a service area which includes the City of Tucson. A portion of the power which the Taxpayer supplies to its customers is generated from generating stations located in northwestern New Mexico. In 1979, 1980, and 1981, the Taxpayer placed in service pollution control devices at its generating stations in New Mexico.

A.R.S. § 43–1030 provides an income tax benefit for taxpayers which install devices

that control atmospheric and water pollutants. The statute permits the taxpayer to elect an accelerated deduction for the portion of such devices attributable to the control of pollutants. The accelerated deduction is based on a 60 month useful life. If the taxpayer does not make the election authorized by the statute, the deduction is to be computed pursuant to section 167 of the Internal Revenue Code. In all relevant years, such a deduction was based on a useful life of 21 years.

The Taxpayer made elections to claim accelerated depreciation deductions for devices first placed in service in tax years 1979, 1980, and 1981. As is directed by A.R.S. § 43–1030, the election was made, with respect to a particular device, in the tax return for the year in which that device was first placed in service. The statute provides that, once an election to accelerate depreciation is made, the elected schedule of depreciation remains in effect for the accelerated life of the asset, unless the taxpayer elects to discontinue rapid amortization. In this case, the Taxpayer did not so elect.

For the tax year 1979, the Taxpayer claimed, for pollution control devices placed in service in 1979, the accelerated deduction authorized by A.R.S. § 43–1030. When the Taxpayer's 1979 return was audited in 1981, the Department accepted the deduction and the 1979 tax year was closed. When the controversy arose which resulted in this lawsuit, the time had elapsed in which any deduction taken in 1979 could have been revisited.

For tax years 1980 and 1981, however, the Department of Revenue disallowed all deductions based on accelerated depreciation of pollution control devices first placed in service in 1979, 1980 or 1981. These disallowances resulted in significant deficiency assessments to the Taxpayer for each of the two contestable tax years. The Taxpayer appealed the assessments to the Department, and, after an unfavorable ruling, to the State Board of Tax Appeals. The State Board upheld the determination of the Department. The Taxpayer brings this suit pursuant to A.R.S. § 42–124 to set aside the deficiency assessments.

The Department has moved for summary judgment. The Taxpayer has responded with a cross motion for summary judgment. The deductions which the Taxpayer claimed and the Department disallowed are authorized by A.R.S. § 43–1030. The issue which the Court must decide is whether or not the Taxpayer is entitled to the deductions which it claimed. The Court holds it is not.

IT IS ORDERED granting summary judgment to the Department of Revenue.

IT IS FURTHER ORDERED denying summary judgment to the Taxpayer.

Summary judgment should be granted when the record before the trial court shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Hinz v. City of Phoenix*, 118 Ariz. 161, 575 P.2d 360 (App.1978).

Here there is little dispute as to the material facts. Where the facts are disputed, or where they are not clear from the record, the Court, as it must, has considered as true what is propounded by the party resisting the motion. *MacConnell v. Mitten*, 131 Ariz. 22, 638 P.2d 689 (1982). Here, both sides have moved for judgment, based on opposite sides of the same issue. Since the Court rules against the Taxpayer, where facts are obscure from the record, the Court accepts as true that which is propounded by the Taxpayer.

### Requirements of A.R.S. § 43–1030(C)

A.R.S. § 43–1030 consists of three paragraphs, A, B, and C. Paragraph A authorizes an income tax deduction of the adjusted basis of qualifying assets over a life of sixty months. Paragraph A also sets forth how the taxpayer is to elect to avail itself of the deduction. Paragraph B defines how the assets are to be amortized if no election is made. There is no disagreement

with respect to the interpretation of Paragraphs A and B of the statute. Paragraph C is where the dispute lies.

Resolution of the controversy between the parties turns upon the interpretation and application of Paragraph C of A.R.S. § 43–1030. A.R.S. § 43–1030(C), during the relevant time period, read as follows:

In determining the adjusted basis for the purposes of subsection A of this section, such device, machinery or equipment upon certification by the department of health services as a device, machinery or equipment for the collection and control at the source of atmospheric and water pollutants and contaminants shall include only an amount that is properly attributable to the construction, reconstruction, remodeling, installation or acquisition of such device, machinery or equipment as certified by the department of health services.

The statute was enacted in 1968. A.R.S. § 43–1030 is essentially the same today as it was originally passed, although the section has been renumbered. In 1989, after the time period relevant to the controversy at issue, the certifying agency was changed to the Department of Environmental Quality. During the years 1979 through 1981, A.R.S. § 43–1030(C) required a certification by the Department of Health Services in order for the deduction to be claimed.

As noted above, the only issue the Court must decide is whether the Taxpayer is entitled to depreciate its out-of-state pollution control devices on a 60 month basis, as provided in A.R.S. § 43–1030(A), or whether it must depreciate the devices based on a 21 year life.

Prior to 1979, tax return instructions prepared by the Department of Revenue provided that, for property not located within Arizona, a taxpayer could submit a certification of compliance from another State or from a federal agency, and qualify for the exemption. There were no such provisions in instructions for 1979 and subsequent years.

For the tax year 1979, the Taxpayer elected the accelerated amortization provided for in the statute for those pollution control devices placed in service in 1979. In an effort to comply with Paragraph C, the Taxpayer submitted a certificate prepared in 1977 by the Health and Environment Department of the State of New Mexico. This certificate certified the appropriateness as pollution control devices of certain devices "proposed to be installed".

A Department auditor questioned whether the New Mexico certificate satisfied the requirement of the statute. His supervisor approved it, however, and the deduction claimed by the Taxpayer was allowed for 1979.

The Taxpayer installed additional pollution control devices at its out-of-state generating facilities in 1980 and 1981. For each of those tax years, the Taxpayer elected to claim the benefit of the accelerated amortization provided by the statute. The parties dispute whether the Taxpayer timely submitted certificates of compliance to the Department to justify the deductions claimed for 1980 and 1981. The Court assumes for the purposes of these motions that certificates from the New Mexico agency were timely provided to the Department for each tax year. These certificates are attached as Exhibits E and F to the statement of facts in support of the Department's motion for summary judgment.

One certificate is dated in 1979, and the other in 1980. The 1979 certificate makes the same certification as does that of 1977. It certifies the appropriateness as pollution control devices of devices "proposed to be installed." The 1980 certificate certifies the appropriateness as pollution control devices of devices "which have been, are being, or are to be acquired and constructed."

The Arizona form of certificate certifies

devices already installed.[1] No New Mexico certificate includes any certification as to the portion of the cost of the device which is properly attributable to its construction, reconstruction, remodeling, installation, or acquisition. In fact, no New Mexico certificate provides any financial information whatsoever.

When the Taxpayer's 1980 and 1981 tax returns were audited, the Department disallowed the deductions claimed, except for that portion of the deductions which the Taxpayer could have claimed had the Taxpayer elected to depreciate the pollution control devices as equipment with a useful life of 21 years according to the sum-of-the-years digit method of computing depreciation.[2]

It is important to keep in mind that the loss of the ability to choose accelerated amortization as opposed to 21 year depreciation does not amount to a complete disallowance of the deduction. Even in a worst case analysis, the Taxpayer will eventually expense the cost of the equipment through depreciation deductions. It is, however, of great economic advantage to a utility investing significant sums in pollution control devices to be able to deduct the cost of those devices as rapidly as possible.

The Taxpayer urges the Court to interpret A.R.S. § 43–1030(C) to permit the use of a sister state certificate when the physical location of the pollution control device is in the sister state. According to the Taxpayer, such an interpretation accords with the obvious legislative intent in enacting the statute. In support of its argument, the Taxpayer points out that such

devices, whether in New Mexico or Arizona, must conform with Federal air quality standards. Because of A.R.S. § 36–1707(A), Arizona air quality standards cannot be stricter than Federal standards.[3] Therefore, claims the Taxpayer, a certificate from New Mexico meets what the legislature intended to require just as much as does one from Arizona.

The Court finds it doubtful if air quality standards are a necessary element in the analysis. Nevertheless, for purposes of these motions, the Court accepts as true the fact conclusions set forth in the Taxpayer's argument. The Court, however, finds such concluded facts to be not relevant.

In interpreting a statute, the Court begins with the language with which the to-be-interpreted statute is written. If what is expressed by that language announces legislative policy not clearly at variance with policy pronounced elsewhere, the Court will not look beyond the words of the statute. *Dearing v. Arizona Dep't of Economic Sec.*, 121 Ariz. 203, 589 P.2d 446 (App.1978).

A.R.S. § 43–1030 authorizes a deduction from income tax which is available only to qualifying taxpayers. It is a pecuniary benefit offered by the legislature to further the achievement of a social goal, the achievement of which the legislature deems to be desirable. The availability of such a deduction is strictly a matter of legislative grace. If a taxpayer can meet what is required in the statute which authorizes the deduction, the deduction is available to that taxpayer. Otherwise, it is not. *Ari-*

1. The Arizona "Application for Certification of an Air Pollution Control Device" and "Notice of Certification of Device" are in the record attached as exhibits to the affidavit of Anthony Leverock, dated May 26, 1988.

2. For purposes of analysis it might be well to review the effect of this Court's ruling on the Taxpayer's tax liability. If the deduction were not available or the Taxpayer had not elected the deduction, the subject devices would be depreciated by some depreciation method acceptable to the Department of Revenue. There is

nothing in the record to indicate what alternatives might have been available to the Taxpayer. However, the record does reflect that, in recomputing the Taxpayer's tax liability after the Department disallowed the deduction, the Department's auditor computed the Taxpayer's tax liability according to the sum-of-the-years digits method over a 21 year estimated life.

3. This statute was renumbered as A.R.S. § 49–425(a) in 1986. Laws 1986, Ch. 368 § 37.

*zona State Tax Comm'n v. Phelps Dodge Corp.*, 53 Ariz. 252, 88 P.2d 79 (1939); *Kahn v. Arizona State Tax Comm'n*, 16 Ariz.App. 17, 490 P.2d 846 (1971), *appeal dismissed*, 411 U.S. 941, 93 S.Ct. 1917, 36 L.Ed.2d 404 (1973); *Mobil Oil Corp. v. State Tax Comm'n of Missouri*, 513 S.W.2d 319 (Mo.1974); *State v. L. & A. Contracting Co.*, 241 Miss. 783, 133 So.2d 546 (1961).

■ The Court interprets A.R.S. § 43–1030(C), as the statute existed at the relevant time, to require that, before a pollution control device can be the subject of a deduction based on accelerated amortization, the device must be certified by the Department of Health Services as one which is a device for the collection and control at the source of atmospheric and water pollutants and contaminates. The statute also required that the Department of Health Services certify for accelerated amortization only that portion of the cost of the device which can be attributed to the construction, reconstruction, remodeling, installation, or acquisition of such devices.

While the statute may not be a model of legislative clarity, it appears clear to the Court that the legislature intended to permit the accelerated amortization of certain pollution control devices. The legislative grant is limited only to that portion of the cost of those devices attributable to the favored function, and is further limited by the requirement that the Department of Health Services certify those devices.

The Court reads nothing into the statute which precludes a taxpayer from obtaining the deduction because the plant upon which the device is utilized is outside of Arizona.

■ In addition to providing for a deduction intended to favor the installation of pollution control devices, the Court holds that A.R.S. § 43–1030(C) imposed a duty on the Department of Health Services. The Department was obligated to provide the certification required to justify the deduction if, in fact, the device was as described in A.R.S. § 43–1030. That duty devolved on the Department of Health Services no matter where the devices were located.

Apparently, the Department of Health Services decided that it would not, or could not, certify pollution control devices located out of state.

■ The Taxpayer argues that this failure by the Department of Health Services opened the door to the application of some other standard not defined by the legislature. The Court believes the law is otherwise. It is the responsibility of a taxpayer claiming a deduction to do what is necessary to justify that deduction. *Arizona State Tax Comm'n v. Phelps Dodge Corp.*, 53 Ariz. 252, 88 P.2d 79 (1939).

■ The record does not indicate whether the Taxpayer made any effort to encourage the Department of Health Services to change its mind once it indicated it would not certify a device located outside of the State of Arizona. It is clear, however, that the Taxpayer did not make a formal application to the Department of Health Services for the certification of any of its out-of-state devices. Further, the record does not establish that such certification could not have been accomplished had the Department accepted the responsibility imposed upon it by A.R.S. § 43–1030(C).

It may be that the Department of Health Services could conclude that it could issue an Arizona certification based on a New Mexico certificate. Perhaps the Department could base an Arizona certificate on a New Mexico certificate plus financial information from the taxpayer. Or it may even be that the Department could do in New Mexico whatever it does in Arizona to provide an Arizona certificate. In any case, it was the duty of the Department of Health Services to decide how to meet the obligation imposed upon it by the legislature.

■ Where an agency of the state refuses to perform a service it is obligated by statute to perform, and such performance is a necessary element to establish a deduction to which the taxpayer is entitled, it

falls upon the taxpayer, not the Department of Revenue, to take such steps as are necessary to compel the recalcitrant agency to do its duty. In order to claim a deduction, a taxpayer must establish its right to have the deduction.

If it were not possible for the Department of Health Services to provide a qualifying certificate when the pollution control devices are installed out of state, then an issue may arise that A.R.S. § 43–1030 violates the commerce clause of the federal constitution, as suggested in the Taxpayer's opening memorandum. The Taxpayer did not establish, however, that what the statute required could not be done. Therefore, the constitutional issue raised by the Taxpayer need not be considered here.

### There Is No Estoppel

Prior to, and during the relevant time period, the Department of Revenue published written instructions intended to assist the corporate taxpayer in preparing its Arizona income tax return. For at least six years prior to 1979, these instructions informed corporate taxpayers that a rapid amortization deduction for pollution control devices was available, and that, to claim the deduction, a certificate from the Arizona State Department of Health was required. The instructions further informed the corporate taxpayer that, "for property not located within Arizona, a certificate from another state or federal agency may be submitted."

The instructions were revised prior to the 1979 tax year. Instructions for the corporate income tax return for the tax year 1979 advised the taxpayer of the deduction, but made no mention of the need for a certificate, whether from Arizona or elsewhere. The Taxpayer inquired of the Department, and was told that certification by the appropriate agency in the state in which the facilities were located would be acceptable to the Department of Revenue. The Taxpayer identifies its informant to be "the Department's audit supervisor."

■ Based on the foregoing facts, the Taxpayer asserts that the state is estopped from denying the Taxpayer the deduction. The Court does not so find. There are different kinds of estoppel. The estoppel of which the Taxpayer claims the benefit is equitable estoppel. *City of Glendale v. Coquat*, 46 Ariz. 478, 52 P.2d 1178 (1935). The elements of equitable estoppel are: (1) conduct by which one induces another to believe in certain facts; and, (2) the inducement results in acts in justifiable reliance thereon; and, (3) the resulting acts cause injury. *Ray v. Mangum*, 163 Ariz. 329, 788 P.2d 62 (*en banc.* 1989).

■ A principal may be estopped by the acts or representations of his agent. *Gertz v. Selin*, 112 Ariz. 562, 544 P.2d 1077 (1976). In order for estoppel to lie, the party claiming estoppel must, in justifiable reliance on the representation of the agent, have acted to its detriment. *Bohonus v. Amerco*, 124 Ariz. 88, 602 P.2d 469 (*en banc.* 1979).

■ Here there are two reasons why there is no estoppel. The fact which the audit supervisor induced the Taxpayer to believe was the manner in which the Department would interpret a statute it was obligated to enforce. The Department has a continuing duty to enforce the income tax statutes of the state as the legislature has enacted them. If the Department determines it has been interpreting a tax statute incorrectly, it is under a duty to revise its interpretation to conform to what it then believes to be correct. An audit supervisor has no authority to bind the Department to an incorrect interpretation of the law. Taxpayers are charged with knowledge of these precepts. Therefore, in this case, the Taxpayer was not justified in relying on the implicit representation of the Department.

In reliance on the representation, the Taxpayer expected to receive a benefit which, as has been said before, was a matter of legislative grace. In the absence of estoppel, the Taxpayer is denied a benefit

to which it is not entitled. That is not the sort of injury which gives rise to estoppel.

■ Even if the ordinary elements of estoppel existed in the record before the Court, estoppel would not lie. The tax collector cannot be estopped from collecting a lawful tax by conduct of the Department of Revenue in years previous to the applicable tax year. *Crane Co. v. Arizona State Tax Comm'n*, 63 Ariz. 426, 163 P.2d 656 (1945); *reaffirmed in Knoell Bros. Constr. v. State Dep't of Revenue*, 132 Ariz. 169, 644 P.2d 905 (App.1982).

The Taxpayer argues that the law announced in Crane in 1945 has been tempered by later decisions of the Arizona Supreme Court. The Taxpayer cites *Freightways, Inc. v. Arizona Corp. Comm'n*, 129 Ariz. 245, 630 P.2d 541 (1981) in support of its position that estoppel may lie against the state.

■ *Freightways*, however, is of no help to the Taxpayer. *Freightways* does hold that in certain circumstances estoppel may be applied against the state. However the application of estoppel against the state is tightly circumscribed. As noted in *Freightways*, "it would appear that where the application of estoppel will not affect the exercise by the state of its governmental powers and sovereignty, or bind it by unauthorized acts of its officers and employees, estoppel will, when justice dictates, be applied to the state." *Freightways, Inc.*, 129 Ariz. at 248, 630 P.2d at 544.

■ If estoppel is applied here, it will affect the administration of the tax law of the state as propounded by the legislature, and will bind the state by an unauthorized act of one of its employees. Clearly, the state is not estopped to deny the Taxpayer the deduction at issue if the Taxpayer does not qualify for the deduction.

### Effect of Statute of Limitations on 1979 Election

Finally, the Taxpayer argues that the Department must, for 1979 devices, allow depreciation deductions at the accelerated rate in 1980 and 1981, because deductions authorized by the statute were allowed on the 1979 return, and the statute of limitations has run on the 1979 return.

The Taxpayer complains that, since the Department of Revenue accepted the election to take the deduction for the 1979 calendar year, and the statute of limitations has run on 1979 returns, the Department cannot now go back and deny the five year amortized depreciation deduction for the tax years 1980 and 1981.

■ The Court holds otherwise. In the assessment and collection of income taxes, each tax year is a separate tax event. *United States v. C.C. Clark, Inc.*, 159 F.2d 489 (5th Cir.1947), *cited with approval in State v. Airesearch Mfg. Co. Inc.*, 68 Ariz. 342, 206 P.2d 562 (1949). An illegal deduction permitted by error in one year does not establish a right to a similar deduction in subsequent years. A five year amortization schedule is not a deduction; it is a method by which a deduction is computed. The statute of limitations affects whether the deduction itself is subject to further challenge by the tax collector. It has no relevance to the method by which such a deduction is computed. If the statute of limitations has not run for tax years 1980 and 1981, deductions taken in those years may be challenged, regardless how they are computed. If the sum-of-the-years digits method is the method to be used if accelerated depreciation is disallowed, the Taxpayer will now have to subtract the depreciation taken in 1979 from the cost basis of the qualifying assets, and compute, on what remains, a depreciation schedule based on the sum-of-the-years digits method for the remaining useful life of the assets.